IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DAVID A. FERRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 06-2377-JAR-JTR |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  The matter has been referred to this court for a Report and Recommendation, and the court recommends the Commissioner's decision be AFFIRMED for the reasons discussed herein.

I.  Background

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff's application for disability insurance benefits was denied initially and upon reconsideration.  (R. 17, 25, 26). Plaintiff sought and was given a hearing before an Administrative Law Judge (ALJ) on Jan. 25, 2006.  (R. 17, 652-712).  At the hearing plaintiff was represented by an attorney, and plaintiff, plaintiff's wife, a medical expert, and a vocational expert testified.  (R. 17, 653).  On Feb. 15, 2006, the ALJ filed a decision in which he determined that plaintiff is not disabled within the meaning of the Act.  (R. 17-24).  Specifically, the ALJ found that although plaintiff is not able to perform his past relevant work as an estate planner, he can perform other work in the economy such as work as a laundry worker, a housekeeper, and a fast food worker, and is not disabled pursuant to the Act.

Plaintiff disagreed with the decision, and sought review by the Appeals Council.  (R. 13).  The Appeals Council denied review.  (R. 8-10).  Therefore, the ALJ's decision is the final decision of the Commissioner, subject to judicial review.  (R. 8); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  Id. The court must determine whether the Commissioner's findings are supported by substantial evidence in the record and whether the

correct legal standard was applied.  White v. Barnhart, 287 F.3d
903, 905 (10th Cir. 2001).  Substantial evidence is more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence as a reasonable mind might accept to support the
conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.
1988).  The court may "neither reweigh the evidence nor
substitute [it's] judgment for that of the agency."  White, 287
F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs.,
933 F.2d 799, 800 (10th Cir. 1991)).  However, the determination
of whether substantial evidence supports the Commissioner's
decision is not simply a quantitative exercise, for evidence is
not substantial if it is overwhelmed by other evidence or if it
constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.
Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     An individual is under a disability only if he can establish
that he has an impairment which prevents him engaging in
substantial gainful activity and is expected to result in death
or to last for twelve months.  The impairment must be of such
severity that claimant is not only unable to perform his previous
work, but cannot, considering his age, education, and work
experience, engage in any other substantial gainful work existing
in the economy.  42 U.S.C. § 423(d).

     The Commissioner has established a five-step sequential
process to evaluate whether a claimant is disabled.  20 C.F.R.

§ 404.1520 (2005); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset of his disability, whether he has severe impairments, and whether the severity of his impairments meets or equals any listing in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Id.</u> at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the process. <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy. <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show

-4-

other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ did not apply the correct legal standard in assessing plaintiff's RFC. (Pl. Br. 29-37). Specifically, he argues that the ALJ's RFC assessment was not based upon all the relevant medical evidence including a PET scan and a report of Dr. Preston; that the ALJ gave no reason for rejecting Dr. Preston's opinion; and the ALJ did not include mental impairments or resulting functional restrictions in the RFC assessment. Id. Additionally, he claims the ALJ did not consider the PET scan or Dr. Preston's report in making his step three determination whether plaintiff's condition meets or equals listing 12.02. (Pl. Br. 35-36). The Commissioner argues that the ALJ properly assessed plaintiff's RFC, applying the correct legal standard. He argues that although the ALJ did not specifically mention Dr. Preston's report, he need not discuss every piece of evidence, and the ALJ's RFC assessment "is entirely consistent with" Dr. Preston's report. (Comm'r Br. 4). He argues that "the ALJ included major limitations of Plaintiff's RFC due to his mental symptoms." (Comm'r Br. 4-5). Finally, the Commissioner argues that the ALJ specifically based his step three determination on the testimony of the medical expert, Dr. Goren and that Dr. Goren testified that plaintiff's condition does not meet or equal listing 12.02. (Comm'r Br. 6)(citing R.

-5-

20, 701).  The court will address each argument as addressed in plaintiff's brief.

## III.  Standard for Assessing Residual Functional Capacity (RFC)

The Commissioner has promulgated regulations regarding assessment of RFC.  20 C.F.R. §§ 404.1545-1546.  RFC is an assessment of the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a).  In assessing RFC, the Commissioner is to consider a claimant's ability to meet the demands of work despite his impairment(s).  <u>Id.</u> at § 404.1545(a).  The assessment is based upon all relevant evidence in the record and must include consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations.  <u>Id.</u> at § 404.1545.  The assessment is to consider physical abilities; mental abilities such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. <u>Id.</u>  The Commissioner has provided examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, and medical source statements.  Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Servs., Rulings 147 (Supp. 2007).

"Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. § 404.1527(a)(2). Medical opinions must not be ignored, and will be evaluated in accordance with factors contained in the regulations.  Id., § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Servs., Rulings 123-24 (Supp. 2007); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

A treating physician is expected to have greater insight into a patient's medical condition, and his opinion is generally given greater weight than opinions of other medical sources, and may be given "controlling weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2).  But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  Nonetheless, opinions of examining physicians are generally worthy of greater weight than the opinions of physicians who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th

-7-

Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  SSR 96-8p includes narrative discussion requirements for an RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2007).  That discussion is to cite specific medical facts to describe how the evidence supports each conclusion.  <u>Id.</u>  It must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  <u>Id.</u>

**A.    The ALJ's Decision**

The ALJ stated that he had "examined all of the voluminous medical records in evidence, with only the most probative to this adjudication noted below." (R. 18).  He discussed records from St. Louis University Hospital, Dr. Fishman, Dr. Caffrey, Dr. Cowan, Dr. Hendler, Dr. Birky, and Dr. Chamberlin.  (R. 18-19).  The ALJ discussed the opinions of the agency consultants, Drs.

Blum and Diller, and the medical expert, Dr. Goren.  (R. 17, 20, 21-22).

The ALJ noted that Dr. Shipko, a psychiatrist, had done a medical file review and produced a report in which he summarized plaintiff's tests and evaluation through Apr. 12, 2005.  (R. 19). The ALJ found "this summary to be essentially accurate and incorporates it herein, as if fully set forth.  (R. 19)(citing Ex. 21F (R. 556-69)).  In his report, Dr. Shipko summarized medical records from St. Louis University Hospital, Dr. Hendler, Dr. Fishman, Dr. Caffrey, the Rehabilitation Institute, Premier Therapy Services, Dr. Ator, the University of Kansas Medical Center, Dr. Lynch, Dr. Judy, Dr. McNamara, Dr. Cowan, Dr. Benincasa, Dr. Stewart, Dr. Deutsch, and Dr. Birky.  (R. 558-66).

In applying the psychiatric review technique at step two to determine the severity of plaintiff's mental impairments, the ALJ gave "substantial weight to the opinions of the State agency psychological consultants, R. Blum, Ph.D. and Richard Diller, Ph.D. . . . since they are consistent with the evidence in the record as a whole." (R. 20).  At step two, the ALJ found that plaintiff has a severe impairment of "cognitive disorder post concussion," (R. 20).  He found all of plaintiff's other impairments, including depression, are not severe.  Id.

At step three, the ALJ accepted the opinion of Dr. Goren that plaintiff's condition does not meet or equal a listing.  (R.

20).  Thereafter, in assessing plaintiff's nonexertional mental restrictions and formulating his RFC assessment, the ALJ gave substantial weight to the opinion of Dr. Goren (the medical expert), and gave "little weight to the opinions of Dr. Cowan regarding the claimant's mental limitations."  (R. 22).  Plaintiff makes no claim of error in the ALJ's evaluation of the opinions of Drs. Blum, Diller, Goren, or Cowan.

However, the ALJ did not discuss a PET scan of plaintiff's brain performed by Dr. Dusing on June 8, 2005, and two reports by Dr. David F. Preston dated June 29, 2005 and Aug. 12, 2005, based upon the PET scan.  (R. 570-77, 585-638).  It is this "failure" about which plaintiff alleges error.  There is no evidence in the record that Dr. Preston ever examined or treated plaintiff.  Rather, Dr. Preston's report indicates that he reviewed the PET scan report and the images produced in the scan, and provided his opinion based thereon.  (R. 598).  In his report dated Jun. 29, 2005, he concluded, "Mr. Ferran may have significant symptoms relating to near term and long-term memory.  Such a loss of activity in the temporal lobes and high parietal regions could be the result a head injury [sic]."  (R. 599).  On Aug. 12, 2005, Dr. Preston prepared a supplemental report "to further explain my findings and opinions regarding David Ferran."  (R. 585).

In the supplemental report Dr. Preston stated he had reviewed certain records:

-10-

1. Appeal of David Ferran dated 12/30/04
2. CIGNA letter, dated 4/20/05
3. Stuart Shipko, M.D. "peer review" (obtained by CIGNA)
4. Updated records of Bernard Judy, M.D.
5. Confidantial Neuropsychological Consultation of Dennis G. Cowen, Ed.D Dated 7/6/05
6. My initial report of 6/29/095

(R. 585).  The court was able to identify only a portion of these records in the administrative record.  The record contains (3) Dr. Shipko's "Medical File Review:  Psychiatry" (R. 557-69), (5) Dr. Cowan's "Confidential Neuropsychological Consultation" (R. 500-40), and (6) Dr. Preston's initial report.  (R. 598-99). The other records are not identifiable in the administrative record.  In his second report, Dr. Preston expanded upon his earlier opinion and concluded that "Mr. Ferran's FDG/PET brain scan demonstrates significant abnormalities of the type seen in other patients with closed head injuries."  (R. 590).

**B.   Analysis**

Plaintiff argues that it is reversible error for the ALJ to fail to specifically mention the PET scan and Dr. Preston's reports and not to give reasons for rejecting Dr. Preston's opinion.  As the Commissioner argues, an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

-11-

As plaintiff admits, Dr. Preston's report and the PET scan are contradicted by record evidence tending to show that plaintiff's mental deficits result from ADHD, a disorder plaintiff had before his injury and with which plaintiff was able to work at a substantial gainful activity level. (Pl. Br. 29-34). Therefore, the evidence at issue is not uncontroverted.

Moreover, the evidence at issue is neither supportive of the ALJ's decision nor significantly probative evidence the ALJ has rejected. Rather, it is irrelevant to the issues presented in the decision. As noted above, the ALJ found that plaintiff has a severe impairment of "cognitive disorder post concussion," and that all of plaintiff's other impairments are not severe. Plaintiff's ADHD is one of the "other impairments" the ALJ found not to be a severe impairment. He stated the "other impairments" are not severe because they have "no more than a minimal effect on the claimant's ability to perform basic work activities." (R. 20). Plaintiff does not argue that his ADHD is a severe impairment in the circumstances of this case. Rather, he argues that his limitations, as opined by Dr. Preston, result from a closed head injury rather than ADHD. (Pl. Br. 33-34).

Here, Dr. Goren stated his opinion that plaintiff's cognitive deficits are "organically determined." (R. 701). Moreover, the ALJ found that plaintiff's ADHD is not severe and that plaintiff has "cognitive disorder post concussion," leading

to the inference that the ALJ believed the cognitive disorder
resulted from plaintiff's injury.  But, the <u>cause</u> of plaintiff's
"cognitive disorder post concussion" is irrelevant to the ALJ's
decision, what is relevant is the limitations or restrictions
<u>resulting</u> from the "cognitive disorder post concussion".
Further, the regulations require that the ALJ's RFC assessment
include all functional limitations even those caused by
impairments that are found not severe.  Thus, the real issue is
what are the functional limitations or restrictions currently
affecting plaintiff's ability to perform work activities,
regardless of the impairment(s) from which they result.

      The ALJ found that plaintiff has "the following
nonexertional mental restrictions:"

      no detailed, complex type of work; only simple,
      routine, repetitive tasks; minimal use of numbers; only
      low stress work; only superficial interaction with the
      public, co-workers, and supervisors; no supervisory
      responsibilities; and no confrontation, arbitration or
      negotiation.

(R. 21).  The court finds these restrictions consistent with the
limiting factors mentioned in Dr. Preston's report.  Plaintiff
makes no attempt to show how the ALJ's RFC assessment is contrary
to or inconsistent with Dr. Preston's report.

      Instead, plaintiff claims "the ALJ does not include Ferran's
Mental Impairments and its functional restrictions in the RFC
that he finds for Ferran."  (Pl. Br. 37).  To the extent
plaintiff is arguing that the ALJ did not consider mental

-13-

impairments and did not include limitations resulting from the
mental impairments in his RFC assessment, that argument is
patently inaccurate as illustrated by the discussion above.  The
ALJ found plaintiff has "cognitive deficits post concussion" and
other non-severe mental impairments, and he included functional
limitations and restrictions resulting from the mental
impairments in his assessment of plaintiff's RFC.

      To the extent plaintiff is arguing that the limitations and
restrictions contained in the ALJ's RFC assessment do not include
limitations resulting from plaintiff's head injury, his argument
ignores the decision.  The ALJ gave substantial weight to the
opinion of the medical expert, Dr. Goren, in formulating the
mental restrictions in his RFC assessment.  (R. 22).  In fact, as
the Commissioner points out, Dr. Goren reviewed all of the
medical evidence, including Dr. Preston's report, and stated his
opinion that plaintiff's mental impairment is organically
determined.  (R. 701).  Dr. Goren stated his opinion regarding
functional restrictions indicated by the medical evidence in the
case file:  (1) nondetailed, noncomplex tasks (R. 702);
(2) superficial interpersonal interaction with supervisors, co-
workers, and the general public, id.; (3) not involved in
confrontation, arbitration, and negotiation, id.; and (4) not
supervise others.  (R. 703).  To Dr. Goren's specific testimony,
the ALJ added restrictions (5) to simple, routine, repetitive

tasks; (6) to minimal use of numbers, and (7) to low stress work. (R. 21).

Dr. Preston noted several limiting factors linked to plaintiff's brain injury: (1) "reduction in the ability to communicate between the intellectual planning centers in the frontal lobes and the short-term memory areas of the temporal lobes," (2) "inability to integrate planning and memory functions," (3) "decreased arithmetic skills," and (4) "marked cognitive linguistic deficits and reduced processing speed." (R. 589). The doctor later characterized these problems as "selective deficiencies in thought, numerical calculations or short-term memory that are the areas of current concern." (R. 590). As stated in factor (1) above, the report shows Dr. Preston believed plaintiff has a reduction in ability to communicate between the intellectual planning centers and the short term memory areas of the brain. However, as to factors 2,3 and 4, it does not appear that Dr. Preston formulated the alleged limitations. Rather, a fair reading of Dr. Preston's report reveals that the doctor believes merely that the PET scan is consistent with deficiencies opined by other physicians. (R. 589)((2) PET scan results "explain Mr. Ferran's inability to integrate planning and memory;" (3) PET scan findings substantiate the decreased arithmetic skills found by Dr. McNamara, and (4) marked cognitive linguistic deficits and

-15-

reduced processing speed noted in July 2002 are "quite consistent with a brain injury"). Dr. Preston's report does not quantify the deficiencies and does not establish that the specific limitations identified by the other sources are correct, he merely opines that the alleged deficiencies are consistent with the PET scan results.

To the extent plaintiff is arguing error because the ALJ did not specifically mention restrictions imposed by Dr. Preston in the RFC assessment, Dr. Preston did not state any specific restrictions or limitations to be considered. What is conspicuous by its absence in Dr. Preston's report is any quantification or explanation of the specific limitations or restrictions caused by plaintiff's head injury. Consequently, the ALJ's mental RFC assessment is not contrary to, or inconsistent with, Dr. Preston's report. Moreover, the ALJ need not give reasons for rejecting Dr. Preston's report because he did not reject it. Although Dr. Preston's report was not inconsistent with or contrary to the ALJ's RFC assessment, it was also not supportive of the assessment because it provides no quantification of restrictions or limitations. Rather, it is not significantly probative of the central issue--what are the limitations in plaintiff's abilities. As the ALJ stated, he considered all the medical records, but he discussed only those which are "the most probative" of the issues adjudicated.

(R.18).  Contrary to plaintiff's claims, the ALJ properly
considered the PET scan and Dr. Preston's report.

In the circumstance, even if the court were to find that it
was error for the ALJ not to specifically state he had considered
the PET scan and Dr. Preston's report, it would find that the
error was harmless.  The Tenth Circuit has applied harmless error
analysis in social security disability cases, and has held that
certain technical errors are "minor enough not to undermine
confidence in the determination of th[e] case."  Gay v. Sullivan,
986 F.2d 1336, 1341 n. 3 (10th Cir. 1993); Diaz v. Sec'y of
Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  It
has also held that where there is substantial evidence to sustain
the ALJ's decision despite an error, the error is harmless, and
the court will not remand merely for a ministerial correction.
Wilson v. Sullivan, No. 90-5061, 1991 WL 35284, *2 (10th Cir.
Feb. 28, 1991).  If there is error here, it is harmless for the
reasons discussed above.

Finally, plaintiff claims that at step three the ALJ failed
to consider the PET scan and Dr. Preston's report pursuant to
Listing 12.02 for Organic Mental Disorders, and merely made the
boilerplate finding that plaintiff's condition does not meet or
equal the criteria of any listing.  (Pl. Br. 35).  Plaintiff's
argument misses the significance of the ALJ's decision.  As
plaintiff's argument implies, the ALJ found, "The record does not

-17-

contain medical findings obtained on clinical examination or special study which are the same as or equal to any of those listed in any subsection of the Listing of Impairments." (R. 20). Immediately thereafter, however, the ALJ stated, "This finding is based upon the testimony of Dr. Goren." Id. The ALJ's statement is significant because, as the Commissioner points out, Dr. Goren specifically stated that he had considered Listing 12.02. (Comm'r Br. 6)(citing R. 701). The record reveals that, after noting he had considered Listing 12.02 among others, Dr. Goren stated, "[Plaintiff's] problems do not meet or equal any listing." (R. 701). Moreover, the record reveals that the medical records through Jan. 11, 2006 (which would include the PET scan and Dr. Preston's report (R. 584-638)) were mailed to Dr. Goren (R. 80), and Dr. Goren testified he had reviewed the records. (R. 700-01). Thus, Dr. Goren's opinion was based on his review including the evidence at issue.

As the ALJ noted in the decision, plaintiff did not allege at the hearing that his condition met or equaled any listing. (R. 20). Further, although plaintiff argues before this court that the ALJ did not state he considered Listing 12.02, plaintiff did not argue, either here or before the Commissioner, that he in fact meets or equals the criteria of the listing. So long as the decision is sufficiently clear for the court to review, the court will not require an ALJ to state each listing which was

-18-

considered at step three.  <u>Birkinshaw v. Astrue</u>, 490 F. Supp. 2d
1136, 1144 (D. Kan. 2007).  Here, the ALJ based his step three
finding upon Dr. Goren's testimony that he had considered Listing
12.02 and that plaintiff's condition does not meet or equal any
listing.  While it might have been better for the ALJ to state
the specific criteria of Listing 12.02 which were not met,
plaintiff presents no argument that the criteria are met or
equaled here, and does not point to evidence tending to establish
that he meets or equals the listing.  In the circumstances, more
is not required.  The court finds no error in the step three
evaluation.

**IT IS THEREFORE RECOMMENDED** that JUDGMENT be entered
AFFIRMING the Commissioner's decision in accordance with the
fourth sentence of 42 U.S.C. § 405(g).

Copies of this recommendation and report shall be delivered
to counsel of record for the parties.  Pursuant to 28 U.S.C.
§ 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the
parties may serve and file written objections to this
recommendation within ten days after being served with a copy.
Failure to timely file objections with the court will be deemed a
waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>,
393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 29th day of August 2007, at Wichita, Kansas.


                                   s/John Thomas Reid
                                   **JOHN THOMAS REID**
                                   **United States Magistrate Judge**